23-909-cv
*United States ex rel. Askari v. PharMerica Corp.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of March, two thousand twenty-four.

Present:

> JOHN M. WALKER, JR.,
> WILLIAM J. NARDINI,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA ex rel. KAVEH ASKARI,

> *Plaintiff-Appellant*,

v.                                                        23-909-cv

PHARMERICA CORPORATION, PHARMACY CORPORATION OF AMERICA, ONCOMED SPECIALTY PHARMACY, LTD., DBA ONCO360, GREG WEISHAR, PAUL JARDINA, ROBERT THOMSON,

> *Defendants-Appellees*.*

---

For Plaintiff-Appellant:            KEVIN P. MULRY, Farrell Fritz, P.C., Uniondale, NY

---

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

1

For Defendants-Appellees:    JOSEPH A. MATTEO (Aaron D. Lindstrom, *on the brief*), Barnes & Thornburg LLP, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (George B. Daniels, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant and *qui tam* relator Kaveh Askari appeals from a judgment of the United States District Court for the Southern District of New York (George B. Daniels, *District Judge*), entered on June 6, 2023. The district court granted Defendants-Appellees' motion and dismissed Askari's amended complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). The district court also denied Askari's motion for leave to file a second amended complaint. Askari sued various pharmacies, Defendants-Appellees PharMerica Corporation ("PharMerica"), Pharmacy Corporation of America ("PCA"), and OncoMed Specialty Pharmacy, LTD., d/b/a Onco360 ("Onco360"), as well as their executives, Defendants-Appellees Greg Weishar, Paul Jardina, and Robert Thomson (collectively, the "Defendants"). Askari alleged that Defendants engaged in schemes that resulted in the submission of false claims for prescription drugs to Medicaid and Medicare, in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and in violation of analogous state statutes in sixteen states and the District of Columbia.[1] With respect to the FCA, Askari asserted a traditional false claim under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B) and a reverse false claim under 31 U.S.C. § 3729(a)(1)(G).

The district court granted Defendant's motion to dismiss Askari's amended complaint, concluding, *inter alia*, that the amended complaint failed to state a claim because it failed to plead

---

[1] All governmental entities declined to intervene in the case.

with particularity either a traditional or reverse false claim. The district court reached that conclusion because, in the district court's view, the amended complaint failed to identify any laws, regulations, or requirements that Defendants' conduct violated. *United States of America ex rel. Kaveh Askari v. PharMerica Corp.*, No. 20 CIV. 5089 (GBD), 2022 WL 4280391, at *3–6 (S.D.N.Y. Sept. 15, 2022).[2]

Askari filed a motion for leave to amend and appended a proposed second amended complaint ("PSAC"). According to the PSAC, Askari is a pharmacist who founded Onco360's corporate predecessor, OncoMed. OncoMed operated in many states, including in thirteen states as an out-of-state pharmacy. To comply with state licensing laws, either Askari or his colleague, Scott Feigeles, obtained the requisite state licensing as the pharmacist in charge ("PIC"). In 2013, PharMerica, through its subsidiary, PCA, acquired a minority interest with management control of a new entity, which did business as Onco360. Askari and Feigeles were terminated from Onco360 in 2014, resulting in Onco360 losing its out-of-state pharmacy licenses in those thirteen states.

According to the PSAC, after losing Onco360's out-of-state licensing, Defendants contrived two ways for Onco360 to continue dispensing prescriptions in the thirteen states. Under the first way (the "Work-Around"), (i) Onco360 accepted, filled, and billed (using its own National Provider Identifier ("NPI")[3]) for prescriptions from those states; (ii) Onco360 shipped those medications to PharMerica pharmacies in those states; (iii) PharMerica reviewed the prescriptions and dispensed those medications to the physicians, hospitals, or patients; and (iv) Onco360 received reimbursement from Medicare for those prescriptions. Under the second approach (the

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

[3] The NPI is a unique identification number for health care providers.

"Onco Manage PharMerica Dispense" or "OMPD"), (i) Onco360 accepted, filled, and billed (using PharMerica's NPI) for prescriptions from those states; (ii) Onco360 shipped those medications to a PharMerica pharmacist in Indiana, who then reviewed and sent the medications to the physicians, hospitals, or patients in those states; (iii) PharMerica received the reimbursement from Medicare; and (iv) PharMerica transferred the Medicare payment to Onco360. Askari claims that both schemes violated out-of-state pharmacy licensing laws. This, in turn, resulted in violations of federal laws that require compliance with applicable state licensing law to receive reimbursements from government payors. Askari also claims that these schemes violated federal regulations on NPI usage and that the OMPD scheme caused overbilling.

The district court denied Askari's motion for leave to amend on the ground of futility because the PSAC still did not identify any law, regulation, or rule that forbids Defendants' conduct—nor did the PSAC explain how any such violations would result in a traditional or reverse false claim to the government. The district court further held that Askari had failed to allege that any alleged false claims by Defendants were material to the federal Medicare program's decisions to reimburse Defendants. Askari now appeals that decision.[4] We assume the parties' familiarity with the case.

"We review *de novo* the denial of leave to amend where the district court determined that the proposed amendments would be futile." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 106–07 (2d Cir. 2023). "Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim" upon which relief can be granted. *Id.* at 107. "To evaluate whether a proposed amended complaint would state a claim, we rely on the same standards as those

---

[4] Although Askari initially identifies the district court's dismissal of his amended complaint as an issue in his brief, Askari addresses only whether the PSAC adequately stated claims under the FCA in the argument section of his brief. Thus, Askari's appeal is limited to the district court's decision denying him leave to file the PSAC.

governing the adequacy of a filed pleading." *Id.* In assessing the adequacy of a pleading under Rule 12(b)(6), "we accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor" to determine whether it "provide[s] enough facts to state a claim to relief that is plausible on its face." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023).

Because *qui tam* complaints filed under the FCA are claims of fraud, they are subject to the heightened pleading standards under Federal Rule of Civil Procedure Rule 9(b). *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud," which "ordinarily requires a complaint alleging fraud to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.*

## I.    False Claim

The FCA imposes liability on "any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(A)–(B). "The FCA recognizes two types of false claims: factually false claims and legally false claims." *United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*, 84 F.4th 126, 130 (2d Cir. 2023).

A factually false claim "includes an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided," whereas a legally false claim "rest[s] on a false representation of compliance with an applicable federal statute, federal regulation, or contractual term." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 104 n.7

(2d Cir. 2021). A legally false claim can be either "[a]n express false certification[, which] occurs when a claimant explicitly represents that he or she has complied with a contractual condition, but in fact has not complied," or "[a]n implied false certification claim[, which] arises where the defendant submits a claim for payment, impliedly certifying compliance with conditions of payment while omitting its violations of statutory, regulatory, or contractual requirements, and these omissions render the representations misleading." *Id.*

### A. Out-of-State Pharmacy Licensing

Askari first contends that the PSAC sufficiently alleges that the Work-Around and the OMPD violated state laws on out-of-state pharmacy licensing. According to Askari, this is because Onco360 qualifies as an out-of-state pharmacy in the relevant thirteen states but Onco360 lacks the required out-of-state pharmacy licenses. Despite this, Onco360 continues to fill prescriptions for patients in those states. Askari argues that Onco360 qualifies as an out-of-state pharmacy in the thirteen states because the states define "dispense" or "dispensing" to include tasks related to the fulfillment of a prescription such as filling and labeling the vials of prescription drugs. Onco360 performs many of these tasks before shipping the medications to PharMerica, which Askari argues means that Onco360's actions are not in compliance with the relevant state laws on out-of-state pharmacy licensing. This, in turn, "made [Defendants'] claims to Medicare and Medicaid false," Appellant's Br. at 39, and that constitutes a legally false claim.

Even if the schemes violated at least one state's out-of-state pharmacy-licensing laws, we agree with the district court that the PSAC failed to plead with particularity how the alleged false claims were material. To be actionable under the False Claims Act, "[a] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176,

6

181 (2016). This standard is "demanding." *Id.* at 194. "[P]roof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id.* at 194–95. And the allegations supporting materiality, like those supporting the other elements of a False Claims Act violation, must meet Rule 9(b)'s particularity requirements. *See id.* at 195 n.6.

Here, Askari primarily offered two allegations to show the materiality of Defendants' alleged false claims: (1) the U.S. Attorney for the Southern District of New York has filed a complaint against a pharmacy participating in Medicare for distributing medications in states where it was not licensed; and (2) the Center for Medicare & Medicaid Services ("CMS") Medicare Fraud Handbook discusses the unlawfulness of claims filed by persons precluded from reimbursement. These allegations are insufficient. Even if the judgments of the U.S. Attorney for the Southern District of New York were indicative of the government's Medicare payment decisions, Askari does not plead that the action filed by the U.S. Attorney involved a "sublicensing" scheme akin to the one alleged by Askari here. Similarly, the CMS Medicare Fraud Handbook's general discussions of fraudulent billing do not establish with particularity that the government would have refused to reimburse Defendants' claims if it had been aware of their dispensing arrangements.

### B. NPI Usage

Askari next contends that the PSAC adequately alleges that Defendants misused NPIs in the following ways: (1) under the Work-Around, Onco360 used its own NPI to submit claims for prescriptions for patients in states in which it was not properly licensed, and (2) under the OMPD, Onco360 used PharMerica's NPI to submit claims for prescriptions for patients in states in which

7

it was not properly licensed. Askari argues that "[t]he failure to use the proper NPI number is a false certification," Appellant's Br. at 40, in violation of 42 C.F.R. § 424.506(c)(1), which states that "[a] provider or supplier that is enrolled in Medicare and submits a paper or an electronic claim must include its NPI and the NPI(s) of any other provider(s) or supplier(s) identified on the claim," and 42 C.F.R. § 424.506(c)(3), which states that "[a] Medicare contractor will reject a claim from a provider or a supplier if the required NPI(s) is not reported." This amounts to an allegation of a legally false claim.

Here, as above, we agree with the district court that the PSAC failed to allege with particularity that Defendants' practices regarding their NPIs were "material to the Government's payment decision." *Universal Health Servs.*, 579 U.S. at 181. "[T]he Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Id.* at 194. Beyond the quoted language of 42 C.F.R. § 424.506(c)(3), Askari offers few allegations supporting the materiality of Defendants' alleged NPI scheme. Instead, much as with the out-of-state licensing, Askari merely alleges that the CMS Medicare Fraud Handbook generally suggests the importance of filing claims under the proper NPI. These allegations do not indicate the materiality to the Government's payment decision of using just one pharmacy's NPI where, as here, one pharmacy assists in the preparation of the prescription and another pharmacy reviews and delivers the medication to the patient or patient's agent.

### C. Overbilling

Askari argues that the PSAC adequately pleads a factually false FCA claim based on the overbilling resulting from the OMPD. We disagree. The PSAC alleges that Onco360 "only serve[s] retail customers," whereas PharMerica is a "long-term care pharmacy." J.A. at 390. As such, PharMerica "*primarily* had contracts [with pharmacy benefit managers ("PBMs"), providing

8

for the long-term patient rate," *id.* (emphasis added), which is higher than the retail patient rate.[5] After the acquisition of Onco360, PharMerica "did not seek to obtain retail PBM contracts." *Id.* Relying on those allegations, the PSAC asserts that, because Onco360 used PharMerica's NPI to submit claims to PBMs under the OMPD, those claims were submitted at the long-term rate rather than the lower retail rate. But even if we draw every reasonable inference in Askari's favor, all the PSAC suggests is that PharMerica had some contracts at the long-term patient rate and some other contracts at an unspecified rate. The fact that PharMerica failed to seek retail rate contracts after the acquisition says nothing about whether PharMerica had already entered retail contracts prior to the acquisition, which remained in force during the period at issue in the PSAC. Thus, although the PSAC adequately alleges that Onco360 submitted claims using PharMerica's NPI to the PBMs, it does not necessarily follow that those claims were submitted at the long-term rate. The PSAC therefore does not adequately allege a factual false claim for overbilling, especially given the heightened demands of Rule 9(b).

## II.     Reverse False Claim

Askari finally argues that the PSAC sufficiently alleges a reverse false claim. A reverse false claim occurs when a defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Askari's reverse false claim is based on the same conduct underlying his traditional false claims,

---

[5] PBMs are private contractors that administer pharmaceutical benefits under Medicare.

and "[b]ecause [his] reverse false claims mirror his [traditional] false claims under § 3729(a)(1)(A) and 3729(a)(1)(B), he fails to state [a] plausible [reverse false] claim[]." *AECOM*, 19 F.4th at 120.

*   *   *

We have considered Askari's remaining arguments and find them unpersuasive. Accordingly, the district court's judgment is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk